UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No. 21-CR-91

JAMIE RAY TRAVIS,

    Defendant.

## REPORT AND RECOMMENDATION

### 1. Background

Jamie Travis is charged with possessing a firearm after having been convicted of a felony. (ECF No. 1.) The charge stems from a December 27, 2020 traffic stop by Milwaukee County Sheriff's Deputy Montrell Hobbs during which the firearm that forms the basis for the indictment was recovered from the glovebox of the Toyota Prius Travis was driving. Travis has moved to suppress the firearm, and an evidentiary hearing on Travis's motion was held before this court on July 29, 2021. Hobbs was the only witness to testify at the hearing. A summary of the evidence adduced is set forth below. At the parties' request, the court accepted post-hearing briefing regarding the motion to suppress.

2. **Evidentiary Hearing Summary**

At about 7:00 P.M. on December 27, 2020, Hobbs stopped a Toyota Prius for speeding. The stop, which was recorded by a camera worn by Hobbs, occurred on I-794 eastbound at about Water Street. A recording of the stop was received as Exhibit 1.

The Prius displayed a dealer's registration plate, which is generally unlawful to display on a vehicle unless it is offered for sale by the dealership. *See* Wis. Stat. §§ 341.47, 341.55. There were no indications the Prius was for sale.

The Prius stopped in the right distress lane, leaving about a foot separating the driver's side of the vehicle from the line dividing the distress and traffic lanes. Because the Prius was parked so close to the traffic lane, Hobbs approached the vehicle on the passenger side. In the front passenger seat was a boy Hobbs believed to be "under the age of 10 years old." (ECF No. 21 at 11:21.) Travis was the driver. No one else was in the car. Travis was on a Facetime call with a woman who stated she was the owner of the car and the mother of the child.

When Hobbs asked Travis for his driver's license, Travis gave Hobbs a Wisconsin identification card. Hobbs asked Travis if he had the title to the vehicle, and Travis said he did not. Hobbs then asked if the vehicle was insured. Travis repeated the question for the woman on Facetime and she can be heard answering that she does have insurance but stating that she does not have the insurance on her. As she started to say that she could show Hobbs the papers, he went around to the driver's side and told

2

Travis to get out of the car. Travis stated that she was going to pull up the papers, to which Hobbs responded that he was not worried about the papers.

Travis got out of the car, Hobbs grabbed hold of him near the elbow, and walked with him back to the squad car. Hobbs told Travis to keep his hands out of his pockets. Immediately thereafter Travis appeared to put his hand back in his pocket, and Hobbs again told him to keep his hands out of his pockets. Travis responded that he was just unzipping his pocket. Travis then removed his keys and put them on the hood of the squad car. Hobbs then proceeded to conduct a pat-down search of Travis.

Hobbs seemed to start with Travis's front right pocket. Hobbs testified that, in patting down Travis's right front pocket, he felt a hard object that, based on his training and experience, was consistent with controlled substances. After patting the outside, Hobbs reached into the pocket to remove cash and a credit or debit card. He then partially removed a cigar, which he immediately returned to the pocket. Then he partially removed a small whitish object, which he again immediately returned to Travis's pocket. Hobbs testified that he believed this object to be a controlled substance in a plastic bag. He then told Travis to place his hands behind his back, which he did, and Hobbs cuffed Travis.

After placing Travis in the back of his squad car Hobbs notified his dispatcher of the arrest and requested that a tow truck come meet them. Hobbs returned to the car to talk with the child, who handed Hobbs the phone so Hobbs could speak to the woman.

Hobbs explained to the woman that she will have to come and get her son, but that she would not be able to get the car. She appeared to ask why she could not get the car, too, to which Hobbs responded, "Because you were not driving the vehicle." After explaining that the vehicle was going to be towed, Hobbs handed the phone back to the boy.

Hobbs then began to look through the Prius, eventually coming to the glovebox. He opened the glovebox and found a gun, after which he notified his dispatcher that he had found a gun. Hobbs then again spoke to the woman to explain where she could come to get her son and to reiterate that her car would be towed and that she could pick it up at the tow lot. He said that it "would be breaking my policy" to allow her to pick up the car from the interstate.

The boy then got out of the car and went to wait with other deputies who had arrived at the scene. After confirming with dispatch that Travis was a convicted felon, Hobbs recovered the firearm, eventually unloading it and securing it in a box.

3. **Analysis**

It is the government's burden to prove by a preponderance of the evidence that the search of the glovebox and the seizure of the firearm were lawful under an exception to the Fourth Amendment's warrant requirement. *United States v. Stewart*, 902 F.3d 664, 674 (7th Cir. 2018). Thus, the court begins its analysis with the government's arguments.

The initial stop of the Prius was permissible based on Hobbs's observation that the car was speeding. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Travis does not argue otherwise.

The government relies on *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001), to argue that Hobbs then lawfully arrested Travis for five traffic violations—speeding, driving without a driver's license or proof of insurance, failing to properly secure a child,[1] and improper use of dealer registration plates. (ECF No. 32 at 6-7.) Incident to that arrest, the government argues, Hobbs lawfully searched Travis and recovered suspected cocaine from his pants pocket. (ECF No. 32 at 6-9.) Although Travis argued in his initial brief that Hobbs's search of Travis was not authorized under *Terry* (ECF No. 28 at 11), Travis's reply brief abandons this argument, and he does not address the government's argument. Therefore, the court accepts as undisputed that Hobbs lawfully searched Travis and recovered suspected cocaine from his pocket as a search incident to the arrest for Travis's traffic offenses.

However, Travis is not charged with possession of cocaine, and the government does not rely on the seizure of the cocaine to justify the search of the car. (ECF No. 32 at

---

[1] Hobbs initially testified that he believed the child to be "under the age of 10 years old." (ECF No. 21 at 11:21.) He testified that he later learned the child was seven years old. (ECF No. 21 at 48:21-49:1.) The distinction is material because a child who is at least eight years old does not need to be restrained in a child safety seat. *See* Wis. Stat. § 347.48(4)(am). Thus, if the child appeared to be eight or nine years old, Hobbs did not have probable cause to believe Travis violated Wis. Stat. § 347.48(4)(am). But because the government does not rely on this offense to justify the search of the car, the court need not consider the question further.

9.) It appears to concede that the search of the Prius was not justified as a search incident to arrest for possession of cocaine, given that Hobbs testified that he "can't say"[2] that he subjectively believed evidence of drug offenses was likely to be found in the car. (ECF No. 32 at 9.) In any event, the government has forfeited any argument by failing to develop it. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010); *see also Mallory v. Rush Univ. Med. Ctr.*, No. 18 C 4364, 2021 U.S. Dist. LEXIS 24547, at *31-32 (N.D. Ill. Feb. 9, 2021) (citing *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000); *Boyers v. Texaco Refin. & Mktg., Inc.*, 848 F.2d 809, 812 (7th Cir. 1988)) (noting that arguments not raised before a magistrate judge are normally forfeited).

Rather, to justify the search of the car the government argues, "It is reasonable to believe that the car contained evidence relating to the car's ownership or insurance status, which are related to other violations the defendant committed." (ECF No. 32 at 9.) In other words, the government asserts that, because Hobbs had probable cause to believe that Travis was speeding, operating a vehicle without a valid driver's license or insurance, improperly displaying a dealership license plate, and failing to properly secure a child, he was permitted to search the Prius for evidence of these offenses.

The government does not articulate what sort of evidence would be likely to be found in the car other than broadly asserting, "It is reasonable to believe that the car contained evidence relating to the car's ownership or insurance status …." (ECF No. 32

---

[2] "Q. Did you believe that there may be any other evidence of drug-related crimes in the car?
A. I can't -- No, I can't say that." (ECF No. 21 at 27:22-24.)

at 9.) It points to *United States v. Edwards*, 769 F.3d 509 (7th Cir. 2014), in which the defendant was arrested on suspicion of driving without the owner's consent. The court of appeals affirmed a search of the car that uncovered a sawed-off shotgun on the basis that "[e]vidence establishing the vehicle's ownership is obviously relevant to that crime," *id.* at 515, and "it was entirely reasonable to believe that evidence of the car's ownership—its registration or title, for example—would be found in the car," *id.* at 511.

*Edwards* is obviously distinguishable in that there was no probable cause to believe that Travis was driving a stolen car. Thus, while it may be true, as the government argues, that "evidence relating to the car's ownership" was likely to be found in the car, the government fails to explain how such evidence would be relevant to any offense that there was probable cause to believe Travis committed.

That leaves only the government's assertion that Hobbs was justified to search the car for "evidence relating to the car's … insurance status." This argument is at least connected to an offense that there was probable cause to believe Travis committed— failing to provide proof of insurance. But the government again fails to develop the argument.

The offense of failing to provide proof of insurance is complete when a driver fails to "display the proof required under [Wis. Stat. § 344.62(2)] upon demand from any traffic officer." Wis. Stat. § 644.62(2); *see also* Wis. Stat. §344.65(1)(c). It is not obvious how a search of a car might reveal evidence that Travis failed to provide proof of

7

insurance to Hobbs. But, more importantly, the government does not advance, and thus has forfeited, any such argument.

In the absence of any explanation from the government, the court must conclude that the government has failed to sustain its burden to show that the search of the Prius was permissible as a search incident to arrest.

The government alternatively argues that the firearm would have been inevitably discovered pursuant to an inventory search of the vehicle. The government argues, "Since the car in which the defendant was driving was going to be towed pursuant to MCSO policy, Dep. Hobbs (or another member of MCSO) would have discovered the firearm in the glovebox during an inventory search." (ECF No. 32 at 11.)

"The doctrine of inevitable discovery provides that illegally obtained evidence will not be excluded if the Government can prove, by a preponderance of the evidence, that the officers 'ultimately or inevitably would have … discovered [the challenged evidence] by lawful means." *United States v. Marrocco*, 578 F.3d 627, 637 (7th Cir. 2009) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)); *see also United States v. Eymann*, 962 F.3d 273, 287-88 (7th Cir. 2020). This requires the government to prove two things: (1) "it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence"; and (2) "it would have conducted a lawful search absent the challenged conduct." *Id.* at 638. The doctrine is not to be invoked lightly. *United States v. Brown*, 328 F.3d 352, 357 (7th Cir. 2003).

It is unclear why the government frames this issue through the lens of inevitable discovery; Hobbs testified that his search was simultaneously both a search incident to arrest and an inventory search. (ECF No. 21 at 28:4-10; 63:17-19.) Thus, the court assesses whether the search was lawful as an inventory search.

"[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). When law enforcement takes possession of a car by towing it, they may look through the vehicle for the purpose of protecting the owner's property, protecting the police against false claims for lost or damaged property, and ensuring their own safety. *Id*. An inventory search may include the glove box of a vehicle. *See South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). An inventory search, however, must be conducted pursuant to established standard procedures. *See Florida v. Wells*, 495 U.S. 1, 4 (1990).

The Milwaukee County Sheriff's Department has a standard policy regarding inventory searches of towed vehicles. (Ex. 2 at 2; Milwaukee County Sheriff's Office Policy Manual § 502.5.) It also has policies regarding the towing of vehicles. (Ex. 2 at 1; Milwaukee County Sheriff's Office Policy Manual § 502.2.) Travis makes much of the fact that the Department's towing policy allows a deputy to release a vehicle to the owner or to another licensed driver with the consent of the owner. In his view, because Travis's girlfriend was coming to pick up her son, she could have picked up her car at the same time.

As a preliminary matter, Travis has not proven that the boy's mother was the owner of the Prius. Beyond that, nothing required Hobbs to consider an alternative to towing the car. *United States v. Clinton*, 591 F.3d 968, 972 (7th Cir. 2010) ("the Fourth Amendment does not 'demand that police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it and conduct an inventory search'" (quoting *United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006)). The Department's policy explicitly states that "[a]gency members do not have to exhaust all possible alternatives to impound …." (Ex. 2 at 1; Milwaukee County Sheriff's Office Policy Manual § 502.2.) For the same reason, Hobbs was not required to consider leaving the car parked on the side of the interstate, as Travis argues he could have. And, in any event, by ordinance all disabled vehicles on Milwaukee County's interstates are deemed to be traffic hazards and deputies are required remove them "forthwith." Milwaukee Cnty. Ord., Appx. C, § 23(1)(a); *see also* Wis. Stat. § 349.13(4).

That leaves the fact that there is no evidence that Hobbs actually completed an inventory following his search. The government failed to elicit evidence addressing this apparent omission or even address it in argument. And "[t]he policy or practice governing inventory searches should be designed to produce an inventory." *Wells*, 495 U.S. at 4.

Nonetheless, the court does not find that the absence of a written inventory negates Hobbs's testimony that his search was an inventory search. Hobbs testified that

10
Case 2:21-cr-00091-JPS     Filed 10/14/21     Page 10 of 12     Document 34

As a preliminary matter, Travis has not proven that the boy's mother was the owner of the Prius. Beyond that, nothing required Hobbs to consider an alternative to towing the car. *United States v. Clinton*, 591 F.3d 968, 972 (7th Cir. 2010) ("the Fourth Amendment does not 'demand that police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it and conduct an inventory search'" (quoting *United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006))). The Department's policy explicitly states that "[a]gency members do not have to exhaust all possible alternatives to impound …." (Ex. 2 at 1; Milwaukee County Sheriff's Office Policy Manual § 502.2.) For the same reason, Hobbs was not required to consider leaving the car parked on the side of the interstate, as Travis argues he could have. And, in any event, by ordinance all disabled vehicles on Milwaukee County's interstates are deemed to be traffic hazards and deputies are required remove them "forthwith." Milwaukee Cnty. Ord., Appx. C, § 23(1)(a); *see also* Wis. Stat. § 349.13(4).

That leaves the fact that there is no evidence that Hobbs actually completed an inventory following his search. The government failed to elicit evidence addressing this apparent omission or even address it in argument. And "[t]he policy or practice governing inventory searches should be designed to produce an inventory." *Wells*, 495 U.S. at 4.

Nonetheless, the court does not find that the absence of a written inventory negates Hobbs's testimony that his search was an inventory search. Hobbs testified that

y

As a preliminary matter, Travis has not proven that the boy's mother was the owner of the Prius. Beyond that, nothing required Hobbs to consider an alternative to towing the car. *United States v. Clinton*, 591 F.3d 968, 972 (7th Cir. 2010) ("the Fourth Amendment does not 'demand that police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it and conduct an inventory search'" (quoting *United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006))). The Department's policy explicitly states that "[a]gency members do not have to exhaust all possible alternatives to impound …." (Ex. 2 at 1; Milwaukee County Sheriff's Office Policy Manual § 502.2.) For the same reason, Hobbs was not required to consider leaving the car parked on the side of the interstate, as Travis argues he could have. And, in any event, by ordinance all disabled vehicles on Milwaukee County's interstates are deemed to be traffic hazards and deputies are required remove them "forthwith." Milwaukee Cnty. Ord., Appx. C, § 23(1)(a); *see also* Wis. Stat. § 349.13(4).

That leaves the fact that there is no evidence that Hobbs actually completed an inventory following his search. The government failed to elicit evidence addressing this apparent omission or even address it in argument. And "[t]he policy or practice governing inventory searches should be designed to produce an inventory." *Wells*, 495 U.S. at 4.

Nonetheless, the court does not find that the absence of a written inventory negates Hobbs's testimony that his search was an inventory search. Hobbs testified that

the purpose of an inventory search is to check that there is nothing of value in the car. (ECF No. 21 at 28:7-10.) In light of this purpose, a review of the body camera footage of Hobbs's search provides a ready explanation as to why it was unnecessary to complete a formal inventory—aside from the gun, nothing of notable value in the car was found. Moreover, insofar the purpose of an inventory search is to protect law enforcement from claims of lost or damaged property, the video recording of Hobbs's search accomplished this goal equally as well as a written inventory.

4. **Conclusion**

Although the government failed to sustain its burden to show that the search of the Prius was lawful as a search incident to arrest, the evidence adduced at the evidentiary hearing shows that Hobbs's search was a lawful inventory search. He was not required to explore alternatives to towing the vehicle after he concluded that Travis could not lawfully continue to drive. Having decided to tow the vehicle, Hobbs was permitted to search the glovebox as part of an inventory search, and thus lawfully discovered the gun that forms the basis for the indictment. Although the government has not shown that Hobbs completed a written inventory, the absence of such a document is not inconsistent with Hobbs's search having been a lawful inventory search.

**IT IS THEREFORE RECOMMENDED** that Jamie Ray Travis's motion to suppress (ECF No. 12) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 14th day of October, 2021.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge