# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMIE RAY TRAVIS,

    Defendant.

Case No. 21-CR-91-JPS

**ORDER**

On May 4, 2021, an indictment was filed against Defendant Jamie Ray Travis ("Defendant") charging him with one count of knowingly possessing a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Docket #1). On June 24, 2021, Defendant filed a motion to suppress evidence obtained during a search of his vehicle upon arrest. (Docket #12). On October 14, 2021, Magistrate Judge William E. Duffin filed a Report and Recommendation (the "R&R") recommending that the motion to suppress be denied. (Docket #34). Defendant objected, and the Government filed a response. (Docket #38, #40). No reply was submitted; therefore, the R&R objections are now fully briefed. The Court will overrule Defendant's objections to the R&R; adopt the outcome of Magistrate Judge Duffin's R&R but overrule some of the R&R's reasoning and provide the Court's own; and deny the motion to suppress.

1. **STANDARD OF REVIEW**

When reviewing a magistrate judge's recommendation, this Court is obliged to analyze de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate." *Id*. The Court's review encompasses both the magistrate judge's legal analysis and factual findings. *Id*.; *see also* Fed. R. Crim. P. 59(b).

## 2. RELEVANT FACTS[1]

At about 7:00 p.m. on December 27, 2020, Milwaukee County Sheriff's Deputy Montrell Hobbs ("Hobbs") stopped a Toyota Prius for speeding. The stop, which was recorded by a camera worn by Hobbs, occurred on I-794 eastbound near Water Street. The parties submitted a recording of the stop as Exhibit 1. The Prius displayed a dealer's registration plate, which is generally unlawful to display unless the vehicle is offered for sale by the dealership. *See* Wis. Stat. §§ 341.47, 341.55. There were no indications the Prius was for sale.

The Prius stopped in the right distress lane, leaving about a foot separating the driver's side of the vehicle from the line dividing the distress and traffic lanes. Hobbs approached the vehicle on the passenger side. In the front passenger seat was a boy who Hobbs believed to be "under the age of 10 years old." (Docket #21 at 11:21). Defendant was the driver. No one else was in the car. Defendant was on a Facetime call with a woman who stated that she was the owner of the car and the mother of the child.

When Hobbs asked Defendant for his driver's license, Defendant gave Hobbs a Wisconsin identification card. Hobbs asked Defendant if he had the title to the vehicle, and Defendant said that he did not. Hobbs then asked if the vehicle was insured. Defendant repeated the question for the woman on Facetime, and she can be heard answering that she does have insurance but stating that she does not have proof of insurance on her. As

---

[1]The relevant facts in this case are not in dispute. Thus, the Court will largely adopt them from the R&R.

she started to say that she could show Hobbs the papers, Hobbs went around to the driver's side and told Defendant to get out of the car. Defendant stated that the woman was going to pull up the papers, to which Hobbs responded that he was not worried about the papers.

Defendant got out of the car, and Hobbs grabbed hold of him and walked with him back to Hobbs's squad car. Hobbs told Defendant to keep his hands out of his pockets. Immediately thereafter, Defendant appears to put his hand back in his pocket, and Hobbs again told him to keep his hands out of his pockets. Defendant responded that he was just unzipping his pocket. Defendant then removed his keys from his pocket and put them on the hood of the squad car. Hobbs proceeded to conduct a pat-down search of Defendant.

Hobbs seemed to start with Defendant's front right pocket. Hobbs testified that, in patting down Defendant's right front pocket, he felt a hard object that, based on his training and experience, was consistent with controlled substances. After patting the outside of the pocket, Hobbs reached in and removed cash and a credit/debit card. He then partially removed a cigar, which he immediately returned to the pocket. Then he partially removed a small whitish object, which he again immediately returned to Defendant's pocket. Hobbs testified that he believed this object to be a controlled substance in a plastic bag. He then told Defendant to place his hands behind his back, which he did, and Hobbs cuffed Defendant. At some point, Defendant admitted that he sometimes uses cocaine.

After placing Defendant in the back of his squad car, Hobbs notified his dispatcher of the arrest and requested that a tow truck come meet them. Hobbs returned to the car to talk with the child, who handed Hobbs the phone so Hobbs could speak to the woman. Hobbs explained to the woman

that she would have to come and get her son, but that she would not be able to get the car. She seemed to ask why she could not get the car, too, to which Hobbs responded, "Because you were not driving the vehicle." After explaining that the vehicle was going to be towed, Hobbs handed the phone back to the boy.

With the boy still in the front passenger seat, Hobbs then began to look through the Prius, working his way from the driver's side, to the back seat, eventually coming to the passenger-side glovebox. Hobbs opened the glovebox and found a gun. He notified the dispatcher that he had found a gun. Hobbs then again spoke to the woman to explain where she could come to get her son and to reiterate that her car would be towed and that she could pick it up at the tow lot. He said that it "would be breaking [his] policy" to allow her to pick up the car from the interstate.

The boy then got out of the car and went to wait with other deputies who had arrived at the scene. After confirming with dispatch that Defendant was a convicted felon, Hobbs recovered the firearm, eventually unloading it and securing it in a box. Hobbs then proceeded to conduct a second search of the Prius.

3.    ANALYSIS

The Fourth Amendment establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Subject to specific exceptions, an officer must obtain a warrant prior to conducting a search of any person or place where a reasonable expectation of privacy exists. *Riley v. California*, 573 U.S. 373, 382 (2014). It is the Government's burden to prove by a preponderance of the evidence that the search of the glovebox and the seizure of the firearm were lawful under an exception to the Fourth

Amendment's warrant requirement. *United States v. Stewart*, 902 F.3d 664, 674 (7th Cir. 2018). The parties and the R&R discuss various doctrines and points at which the searches that ultimately revealed the firearm were legal (or illegal). The Court will address each, in turn.

### 3.1 The Traffic Stop

The initial stop of the Prius was permissible based on Hobbs's observation that the Prius was speeding. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Defendant does not argue otherwise.

### 3.2 The Arrest

After the initial traffic stop, Hobbs made additional observations that Defendant had violated multiple traffic laws, including speeding, driving without a driver's license or proof of insurance, failing to properly secure a child, and improper use of dealer registration plates. Hobbs lawfully arrested Defendant for these violations. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). The parties do not dispute the legality of Defendant's arrest.

### 3.3 The Search Incident to Arrest – Search of Defendant

One exception to the Fourth Amendment's warrant requirement is a search incident to the lawful arrest. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson*, 414 U.S. 218, 235 (1973). "It is a 'bright-line rule' that officers are allowed to and should thoroughly

Page 5 of 15
Case 2:21-cr-00091-JPS   Filed 03/21/22   Page 5 of 15   Document 41

search suspects' clothing and bodies upon arrest, even if they do not suspect at that time that the person is armed or carrying contraband for the protection of themselves and others." *United States v. Brown*, 233 F. App'x 564, 568 (7th Cir. 2007); *see also United States v. Gary*, 790 F.3d 704, 709 (7th Cir. 2015) ("The [Supreme] Court expressly rejected the need for 'case-by-case adjudication' to determine if a particular search served those functions and instead held without qualification that a search of an arrestee's person was per se reasonable under the Fourth Amendment.").

As the R&R notes, Defendant argued in his initial brief that the search of his person was unlawful, however, his reply brief abandoned that argument. (Docket #34 at 5; *see* Docket #33). Similarly, in his objection to the R&R, Defendant does not discuss this matter. Magistrate Judge Duffin concluded that the search of Defendant incident to his arrest was lawful. The Court is inclined to agree. But, ultimately, the Court's analysis on this point does not matter.

The search of Defendant's person revealed a bag of suspected cocaine; in the video of the arrest, Defendant can be heard telling Hobbs that he does cocaine. Curiously though, Defendant's arrest (and his later charges) did not stem from his possession of cocaine. Also, the Government does not rely on the seizure of the suspected cocaine to justify (i.e., create probable cause for) the search of the Prius. In fact, the Government does not use the suspected cocaine as grounds for any of Hobbs's actions or beliefs. (Docket #32 at 9). ("Although [] Hobbs did testify that he 'can't say' that he believed there would be additional evidence of drug-related crimes in the car, the cocaine possession is not the only offense for which [] Hobbs had probable cause to arrest."). The search of Defendant's person and the fruits of that search are non-issues in this case.

### 3.4    The Search Incident to Arrest – Search of the Prius

A search of an automobile incident to a lawful arrest may not be conducted without a warrant, unless "(1) [] the arrestee is within reaching distance of the vehicle during the search, or (2) [] the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'" *Davis v. United States*, 564 U.S. 229, 234–35 (2011) (quoting *Arizona v. Gant*, 556 U.S. 332, 343 (2009)).

First, Defendant—the arrestee—was no longer within reaching distance of the Prius when Hobbs searched it. Defendant was handcuffed in the back of a police vehicle. Second, Defendant's crimes of arrest included speeding, driving without a driver's license or proof of insurance, and failing to properly secure a child. In its brief to Magistrate Judge Duffin, to justify the search of the Prius as one incident to Defendant's arrest, the Government argued that "[i]t is reasonable to believe that the car contained evidence relating to the car's ownership or insurance status, which are related to other violations the defendant committed." (Docket #32 at 9). As support, the Government discusses *United States v. Edwards*, 769 F.3d 509 (7th Cir. 2014).

In *Edwards*, the defendant's girlfriend had reported him to law enforcement for stealing her vehicle. *Id.* at 511. Shortly after an officer heard about the reported theft via a police dispatch, he spotted the vehicle and pulled it over. *Id.* The officer asked the defendant for his license and registration. *Id.* The defendant admitted that the car did not belong to him, and he was unable to find evidence of the car's registration. *Id.* The defendant also admitted that he did not have a valid license. *Id.* After putting the defendant in the back of the police vehicle, the officer searched the vehicle and found contraband, including marijuana and a sawed-off

shotgun. *Id.* The defendant was indicted for possession of a firearm as a felon, among other things. *Id.* at 512–13. He moved to suppress the gun. *Id.* at 513.

The Seventh Circuit first concluded that, because "[the defendant] was handcuffed and sitting in the back of the police squad when [the officer] searched [the vehicle], only the second justification for a search incident to arrest [was] available here." *Id.* at 514. In analyzing the second search-incident rationale, the Court reiterated that "[t]he suspicion required for a vehicle search incident to arrest under *Gant* is keyed to the *offense of arrest*." *Id.* (citing *Gant*, 556 U.S. at 351) (emphasis added). The Court concluded that because

> [the defendant] was arrested for (among other possible offenses) driving a vehicle without the owner's consent . . . . it was entirely reasonable to believe that evidence of the offense of driving a vehicle without the owner's consent would be found in the [vehicle]. Evidence establishing the vehicle's ownership is obviously relevant to that crime . . . . registration and title documents are evidence of ownership and are often kept in a car. That's enough for a valid vehicle search incident to [the defendant's] arrest.

*Id.* at 514–15.

As the R&R correctly notes, *Edwards* is distinguishable. Here, Defendant was not arrested for driving a stolen vehicle. While it may be true, as the Government argues, that "evidence relating to the car's ownership" was likely to be found in the car, the Government fails to explain how such evidence would be relevant to any offense for which Defendant was arrested.

That leaves only the Government's assertion that Hobbs was justified to search the car for "evidence relating to the car's . . . insurance status." This argument is at least connected to an offense for which there

was probable cause to believe Defendant committed (i.e., failing to provide proof of insurance). But the Government again fails to develop the argument. The offense of failing to provide proof of insurance is complete when a driver fails to "display the proof required under [Wis. Stat. § 344.62(2)] upon demand from any traffic officer." Wis. Stat. § 644.62(2); *see also* Wis. Stat. § 344.65(1)(c). It is not obvious how a search of a car might reveal evidence that Defendant failed to provide proof of insurance to Hobbs. Further, the Government appears to have dropped this argument in its briefing on the objection the R&R. The search of the Prius was not a lawful search incident to Defendant's arrest.

### 3.5 The Inventory Search of the Prius

As the Seventh Circuit explained in *United States v. Jackson*, "warrantless inventory searches of impounded vehicles by authorities pursuant to a standard police policy or procedure do not violate the Fourth Amendment." 189 F.3d 502, 508 (7th Cir. 1999) (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). This exception to the warrant requirement "allows police to search vehicles prior to impoundment so as to prevent false claims of loss of property or vehicular damage." *Id*. A warrantless inventory search may be constitutional if "(1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search satisfies the fourth amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *Id*. (quoting *United States v. Velarde*, 903 F.2d 1163, 1165 (7th Cir. 1990)).

The R&R concludes as follows:

The Milwaukee County Sheriff's Department has a standard policy regarding inventory searches of towed vehicles. It also has policies regarding the towing of vehicles.

> . . . .
>
> > [T]here is no evidence that Hobbs actually completed an inventory [form] following his search. The government failed to elicit evidence addressing this apparent omission or even address it in argument. And "[t]he policy or practice governing inventory searches should be designed to produce an inventory."
> >
> > Nonetheless, the court does not find that the absence of a written inventory negates Hobbs's testimony that his search was an inventory search. Hobbs testified that the purpose of an inventory search is to check that there is nothing of value in the car. In light of this purpose, a review of the body camera footage of Hobbs's search provides a ready explanation as to why it was unnecessary to complete a formal inventory—aside from the gun, nothing of notable value in the car was found. Moreover, insofar the purpose of an inventory search is to protect law enforcement from claims of lost or damaged property, the video recording of Hobbs's search accomplished this goal equally as well as a written inventory.

(Docket #34 at 9–11) (internal citations omitted). The Court disagrees with the R&R's conclusion that Hobbs's search was a proper inventory search.

An inventory search should comport with its purpose, i.e., to "produce an inventory" of the items in the car. *Florida v. Wells*, 495 U.S. 1, 4 (1990). The Milwaukee County Sherriff's Office (the "Sherriff's Office") Policy 502.5 is explicit, stating that "[a]ll property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form . . . . Members conducting inventory searches should be as thorough and accurate as practicable in preparing an itemized inventory." (Exhibit #2). This policy was clearly drafted to address the three needs that justify an inventory search: "the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential

danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Indeed, the Supreme Court has stressed the importance of obtaining "[k]nowledge of the precise nature of the property" during an inventory search. *Colorado v. Bertine*, 479 U.S. 367, 373 (1987).

Hobbs followed none of the Sherriff's Office's protocols. The vehicle was not yet towed or impounded; it was on the side of a highway in the dark of winter. The items in the car were not inventoried and listed. Hobbs determined for himself that none of the items in the car were of value, and, thus, he did not create an inventory. Instead, the Government now tries to argue that video recording of Hobbs's search accomplished the goal of the inventory policy. But the search of the vehicle was neither accurate nor thorough; the video shows Hobbs picking up and tossing items down in the back seat and not going through all of the containers in the trunk.

The R&R states that Hobbs's search got close enough to effectuating the goal of the inventory policy (i.e., that Hobbs's body-camera video sufficed to meet these important needs). Again though, the inventory search doctrine clearly requires conformity to a limited-discretion policy. *Florida v. Wells*, 495 U.S. 1, 4 (1990) ("The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime.") (quotations and citations omitted). Hobbs exercised far too much discretion for his actions to be considered an inventory search, and his body camera footage comes nowhere near the level of preciseness of a proper inventory list. An inventory search should not be used as "a ruse for a general rummaging in order to discover incriminating evidence." *Wells*, 495 U.S. at 4. Here, it was.

Page 11 of 15
Case 2:21-cr-00091-JPS    Filed 03/21/22    Page 11 of 15    Document 41

### 3.6 Inevitable Discovery

The Government is left with one saving argument: that the firearm would have inevitably been discovered by the police. The R&R quickly disposes of this argument, stating that "[i]t is unclear why the government frames this issue through the lens of inevitable discovery; Hobbs testified that his search was simultaneously both a search incident to arrest and an inventory search. Thus, the court assesses whether the search was lawful as an inventory search." (Docket #34 at 8). The Court disagrees with this assessment. That Hobbs's actions constituted a lawful inventory search is one of the Government's worst arguments; the inevitable discovery doctrine is the Government's best argument.

Under the inevitable discovery doctrine, illegally seized evidence need not be suppressed if the Government can prove by a preponderance of the evidence that the evidence inevitably would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 442–44 (1984). To satisfy this burden, the Government must demonstrate (1) that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence, and (2) that it would have conducted a lawful search absent the challenged conduct. *United States v. Marrocco*, 578 F.3d 627, 638 (7th Cir. 2009).

The Court finds that the Government has proven by a preponderance of the evidence that police would have discovered the firearm in a lawful inventory search had Hobbs not gotten ahead of himself. The Prius was going to be towed. Hobbs told Defendant and the owner of the Prius multiple times that he was having the car impounded. He explicitly refused the woman's request to allow her to pick up the car at the scene of the arrest. Ultimately, the car was towed. The Sherriff's Office has

an explicit policy requiring impounded vehicles to be inventoried. Case law is rife with examples of courts accepting the Government's inevitable-discovery doctrine in combination with the inventory-search doctrine. *See, e.g.*, *United States v. Haldorson*, 941 F.3d 284, 293 (7th Cir. 2019) ("The police officers would have towed his vehicle to the police station and conducted an inventory search of the vehicle per established Plainfield Police Department procedures."); *United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010) ("Also obviously, the arresting officers would not have allowed the truck to just sit on the street after [the defendant] was carted away. What they would have done, in all likelihood, was impound the truck and have it towed away. An inventory search would have naturally followed; the evidence would have been inevitably discovered."); *United States v. Cartwright*, 630 F.3d 610, 616 (7th Cir. 2010) ("Of course, by the time [the officer] conducted the actual inventory search here, the gun had already been seized . . . . But the district court found, based on the evidence and the [police] policy, that an inventory search would have been conducted and that the gun would have been found pursuant to such a search."). The firearm in the Prius would have inevitably been discovered during a lawful inventory search.

### 4.     CONCLUSION

In the present case, the Government does not contend that Hobbs had probable cause to search Defendant's vehicle. Hobbs did not have a warrant. His search was not intended to protect himself from hazards within Defendant's arm reach or to prevent the destruction of evidence. His search was not in pursuit of evidence related to the crime of arrest. His alleged "inventory search" of the vehicle was conducted sloppily, against protocol, and seemingly not for the purpose of inventorying the vehicle.

Make no mistake: but for the inevitable-discovery exception, Hobbs's search of Defendant's vehicle was illegal and a violation of the Constitution.

If police wish to conduct an inventory search for its express purpose, then they should do so correctly. Police should not feel comfortable using the inevitable-discovery doctrine in combination with the inventory-search doctrine to conduct on-the-spot, illegal vehicle searches with the comfort of assuming they *could* obtain the evidence legally. That hindsight analysis is the job of the courts—not the police.

As is often noted by Chief Justice Roberts, there is a simple solution to avoiding Fourth Amendment violations: follow the legal frameworks designed to protect Fourth Amendment rights.[2] In this case, the police could have properly inventoried the vehicle. There was no reason for rushed procedure during this police stop. The present motion, its two rounds of briefing, Magistrate Judge Duffin's R&R, and this Court's Order were easily avoidable had the police conformed their conduct to the law in the first instance.

For the reasons explained above, the Court will deny Defendant's motion to suppress. The Court adopts the R&R's outcome but overrules some of its reasoning, as outlined above.

Accordingly,

**IT IS ORDERED** that Defendant's objection to Magistrate Judge William E. Duffin's report and recommendation (Docket #38) be and the same is hereby **OVERRULED**;

---

[2] "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Riley v. California*, 573 U.S. 373, 403 (2014); "Before compelling a wireless carrier to turn over a subscriber's [cell-site location information], the Government's obligation is a familiar one—get a warrant." *Carpenter v. United States*, 138 S. Ct. 2206, 222 (2018).

**IT IS FURTHER ORDERED** that the outcome of Magistrate Judge William E. Duffin's Report and Recommendation (Docket #34) be and the same is hereby **ADOPTED** but its reasoning be and the same is hereby **OVERRULED** as stated in the terms of this Order; and

**IT IS FURTHER ORDERED** that Defendant's motion to suppress (Docket #12) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of March, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge